# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CONVERTING ALTERNATIVES
INTERNATIONAL, L.L.C., a Michigan
Limited Liability Company,

       Plaintiff,                        CASE NO. 06-CV-13695

-vs-                                  PAUL D. BORMAN
                                      UNITED STATES DISTRICT JUDGE

B&D SPECIALTY SERVICES, INC., a
Wisconsin Corporation and ET
CONSULTING, L.L.C., a Colorado
Limited Liability Company,

       Defendants.

B&D SPECIALTY SERVICES, INC.,

       Counter-Plaintiff,

-vs-

CONVERTING ALTERNATIVES
INTERNATIONAL, L.L.C.,

       Counter-Defendant.

B&D SPECIALTY SERVICES, INC.,

       Cross-Plaintiff,

-vs-

ET CONSULTING, L.L.C.,

       Cross-Defendant.

B&D SPECIALTY SERVICES, INC.,

       Third-Party Plaintff,

1

-vs-

BOBST GROUP USA, INC., a
New Jersey Corporation,

        Third-Party Defendant.

_____/

<u>**OPINION AND ORDER DENYING**</u>
<u>**(1) DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL**</u>
<u>**JURISDICTION; AND (2) DEFENDANT'S MOTION TO TRANSFER VENUE**</u>

Before the Court are Defendant / Counter-Plaintiff's December 18, 2006 (1) Motion to

Dismiss for Lack of Personal Jurisdiction; and (2) Motion to Transfer Venue. (Docket No. 19).

Plaintiff / Counter Defendant filed its Response on January 29, 2007. (Docket No. 21). The

Court held a motion hearing on March 7, 2007. Having considered the entire record, and for the

reasons that follow, the Court DENIES both motions.

**I.      BACKGROUND**

This case arises out of a dispute concerning liability for damage and repair of a press that

was relocated from New Jersey to Pennsylvania.

Plaintiff / Counter-Defendant Converting Alternatives International, L.L.C. ("CAI") is a

Michigan company with its principal place of business in Lake Orion, Michigan. (Compl. ¶ 2).

Defendant / Counter-Plaintiff B&D Specialty Services, Inc. ("B&D") is a Wisconsin company

with its principal place of business in Denmark, Wisconsin. (Compl. ¶ 3). Defendant ET

Consulting, L.L.C.  ("ET Consulting) is a Colorado company with its principal place of business

in Boulder, Colorado. (Compl. ¶ 4).

CAI is in the business of facilitating and relocation of industrial machinery. (Compl. ¶ 8).

B&D is in the business of providing installation and relocation services in the plastic and paper

industry for printing, extrusion, and converting equipment. (Compl. ¶ 9). ET Consulting is also

in the business of facilitating the relocation of industrial machinery. (Compl. ¶ 10). Non-party

Union Packaging, L.L.C. ("Union Packaging") is a manufacturer of folding cartons for quick-

serve restaurants and is headquartered in Pennsylvania. (Compl. ¶ 11).

On or about October 10, 2005, CAI submitted a quote to Union Packaging for the

removal and installation of a Union Packaging machine called the "Bobst Web 02 Flexo press."

(Compl. ¶ 12). The press was to be moved approximately twenty (20) miles from a facility in

Pennsauken, New Jersey, to a facility in Yeadon, Pennsylvania. (Compl. ¶ 13). CAI quoted a

price of $252,840 for the project, which Union Packaging accepted on or about October 10,

2005. (Compl. ¶¶ 14-15). Union Packaging also contracted with CAI to perform certain

modifications to a part of the press known as the "stripper," to which Union Packaging agreed to

pay an additional $98,000. (Compl. ¶ 16).

In August 2005, Tom Williams, an agent of CAI, met with Bernard Wotachek and a

superintendent of B&D near Montreal, Quebec. (Def. Br. Ex. C, Wotachek Aff. ¶ 3). CAI

requested that B&D provide quotes on several projects: (1) a September 2005 project in

Minnesota; (2) an October 2005 removal of equipment in New Hampshire; (3) November-

December 2005 projects in North Carolina and Texas; and (4) the project in the instant dispute in

New Jersey and Pennsylvania. (*Id*. ¶ 4; Pl. Br. Ex. B).

According to B&D, none of its representatives ever entered Michigan to conduct any

business prior to this occasion. (Wotachek Aff. ¶ 5). B&D further argues that it does not solicit

work from any Michigan companies. (*Id*. ¶ 7). According to B&D, CAI initiated the contact

between the two companies both in Canada and by phone calls from CAI's Michigan office to

3

B&D's Wisconsin office. (*Id.* ¶ 8)

On or about October 27, 2005, B&D sent a subcontracting quote for $138,000 to CAI in Michigan to perform certain work under the contract, namely mechanically and electrically disconnecting the press, crating the press components, loading the press onto trucks, transporting the press to the new facility, and reconnecting the press at the destination facility. (Compl. ¶¶ 17-19; Pl. Br. 2, Ex. B, C, Williams Decl. ¶ 3). B&D, from its Wisconsin office, provided the quote to CAI via email. (Wotachek Aff. ¶ 10). CAI accepted B&D's quote on or about October 27, 2005, by telephoning Wotachek. (*Id.* ¶ 11). All invoices involving the project were sent by B&D to CAI in Michigan. (Williams Decl. ¶ 4). CAI sent all payments from Michigan to B&D in Wisconsin. (*Id.*).

CAI also contracted with B&D in 2005 to relocate machinery from CAI's client facility in New Hampshire to a facility in North Carolina. (*Id.*). The proposal for this project was sent to CAI in Michigan and was accepted by CAI through a phone call made from Michigan. (*Id.*). All invoices from the New Hampshire project were sent to CAI in Michigan, and CAI sent all payments relating to this project from Michigan. (*Id.*)

CAI also hired ET Consulting in October 2005 to start up the press after B&D installed it in the new location. CAI agreed to pay ET Consulting $30,000 for that work. (Compl. ¶ 20). CAI also hired two Bobst technicians to assist the start-up of the press. (Compl. ¶ 21).

Upon the relocation of the press to Yeadon, Pennsylvania, one or more of the press' circuit breakers overloaded and "blew" during the standard start-up process (Compl. ¶ 22). When ET Consulting and Bobst technicians examined the electrical system on the press, they found two cables were reversed in a portion of the press known as "box 13." (Compl. ¶ 23). The

4

reversal of the cables caused 220 volts to be applied to a 24-volt circuit, causing extensive damage to the press. (Compl. ¶ 24). CAI alleges that a B&D technician had made all the connections in box 13. (Compl. ¶ 25). B&D disputes the identity and company affiliation of the individual who caused damage to the press. (Def. Br. 12).

After CAI notified B&D of the damage to the press, CAI alleges that B&D owner and officer, Wotachek, told CAI that B&D would pay for the damage through its insurance carrier, that CAI should send all related invoices to B&D, and that CAI would be reimbursed. (Compl. ¶ 26). B&D admits receiving the invoices at its Wisconsin office. (Def. Br. 13, Ex. B).

CAI, ET Consulting, and Bobst technicians worked to repair the press to avoid being charged by Union Packaging for down time lost. (Compl. ¶ 27). The press was inoperable for six weeks while the repairs were made. (Compl. ¶ 28).

As of August 2006, CAI had paid a total of $216,900.36 to repair the press. (Compl. ¶ 30). Union Packaging also paid a portion of the repair costs and has demanded reimbursement from CAI for the repairs. (Compl. ¶ 31).

CAI has sent invoices to B&D totaling $323,926.75, for amounts expended by CAI and the amount billed to CAI by Union Packaging. (Compl. ¶ 32, Ex. C). B&D has refused to pay CAI this amount. (Compl. ¶ 33). Due to damage to the press, Union Packaging has withheld the final 10% of the payments of CAI's work, amounting to $35,084. (Compl. ¶¶ 34-35). As a result of B&D's alleged negligence, CAI claims that it lost a subsequent job that would have generated a $120,000 profit. (Compl. ¶ 36). Union Packaging and its affiliates have also refused to contract with CAI until Union Packaging is made whole for losses allegedly caused by B&D. (Compl. ¶ 37).

On August 18, 2006, CAI filed a Complaint against B&D and ET Consulting, stating the

following causes of action:

| | |
|---|---|
| Count I: | Breach of Contract (B&D) |
| Count II: | Promissory Estoppel (B&D) |
| Count III: | Common Law Indemnification (B&D) |
| Count IV: | Negligent Misrepresentation (B&D) |
| Count V: | Contribution (B&D) |
| Count VI: | Breach of Contract (ET Consulting) |
| Count VII: | Common Law Indemnification (ET Consulting) |
| Count VIII: | Contribution (ET Consulting) |

On October 23, 2006, B&D filed the following Counter-Claims against CAI:

| | |
|---|---|
| Count I: | Account Stated |
| Count II: | Breach of Contract |

B&D also filed a Cross-Claim against ET Consulting and Third Party Complaint against

the Bobst Group for negligence, joint liability, contribution, and indemnity.

## II.   ANALYSIS

B&D argues that the court lacks personal jurisdiction over it. In the alternative, B&D

argues that the Court should transfer venue to the Eastern District of Pennsylvania.

### A.   Personal Jurisdiction

#### 1.   Standard of Review

To avoid FRCP 12(b)(2) dismissal where there has been no evidentiary hearing, a

plaintiff need only present a prima facie case for jurisdiction. *Audi AG & Volkswagon of*

*America v. D'Amato*, 341 F. Supp. 2d 734, 741 (E.D. Mich. 2004). Plaintiff has the burden of

demonstrating personal jurisdiction exists over Defendant. *Neogen Corp. v. Neo Gen Screening,*

*Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). A court must consider all affidavits and pleadings in a

light most favorable to plaintiffs and does not weigh the controverting assertions of the party

6

seeking dismissal. *Id*. Where a court has not held an evidentiary hearing, a plaintiff must not simply stand on its pleadings, but must by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991).

In order for the Court to exercise personal jurisdiction over B&D, the "defendant must be amenable to suit under the forum's long-arm statute and the due process requirements of the Constitution." *Cole v. Mileti*, 133 F.3d 433, 438 (6th Cir. 1998).

The Court finds that CAI has satisfied both the prima facie case for jurisdiction under Michigan's long-arm statute and that exercising personal jurisdiction in this instance comports with Due Process.

### 2.     Limited Personal Jurisdiction

Michigan law describes the circumstances by which a Michigan court can exercise limited personal jurisdiction over a corporation or its agents:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1)     The transaction of any business within [Michigan].
>
> (2)     The doing or causing any act to be done, or consequences to occur, in [Michigan] resulting in an action for tort.
>
> (3)     The ownership, use, possession or any real or tangible personal property situated within this state.
>
> (4)     Contracting to insure any person, property, or risk located within this state at the time of contracting.
>
> (5)     Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

MICH. COMP. LAWS ANN. § 600.715  The Sixth Circuit has held that § 600.715(1) is established by the "slightest act of business in Michigan." *Neogen*, 282 F.3d at 888.

Here, B&D did business with a Michigan company: it sent telephone and electronic communications to CAI in Michigan about the press project, sent the project proposals to Michigan, sent invoices to Michigan, and received payments from Michigan.

The Court finds that these activities satisfy the "slightest act of doing business" requirement. Accordingly, the Court finds that Michigan's long-arm statute covers B&D's conduct.

3.      Due Process

Even if a defendant is covered by a state's long-arm statute, the exercise of a court's jurisdiction must still comply with Due Process. The Michigan Supreme Court has interpreted the state's long-arm statute to bestow the broadest possible grant of personal jurisdiction consistent with due process. *Sifers v. Horen*, 385 Mich. 195, 198-99 (1971). In order to show that a court's jurisdiction is consistent with Due Process, a plaintiff must establish the existence of a defendant's significant minimum contacts to satisfy "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Sixth Circuit has set forth the following three criteria to evaluate the "minimum contacts" requirement:

(1)      The defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state;

(2)      The cause of action must arise from the defendant's activities there; and

(3)      The acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction reasonable.

*Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 150 (6th Cir. 1997).

a.      Purposeful Availment

To satisfy Due Process, a defendant must "purposefully avail" itself of the privilege of doing business in Michigan. The Supreme Court has described "purposeful availment" as (1) requiring that there be substantial connection between the defendant's conduct and the state such that defendant should reasonable anticipate being haled into court in that jurisdiction and (2) that such contacts must not be "random, fortuitous, or attenuated." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985). As long as its actions are "purposefully directed" towards residents of the forum, a defendant's lack of physical presence in the forum does not defeat personal jurisdiction. *Id*. at 476. "Fair warning," for Due Process purposes, is satisfied when the defendant has "purposefully directed his activities at residents of the forum state" and the source of litigation arises or is related to those activities. *Id*. at 472. While a contract with a citizen of a forum state is not enough, in itself, to confer personal jurisdiction, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing. . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id*. at 479. Federal courts in Michigan have described this requirement as "something akin either to a deliberate undertaking to do or cause an act or thing to be done in Michigan or conduct which can be properly regarded as a prime generating cause of the effects resulting in Michigan, something more than a passive availment of Michigan opportunities." *The Sports Auth. Michigan, Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 811 (E.D. Mich. 2000).

B&D analogizes the facts of the instant case to the Sixth Circuit's decision in *Lak v. Deer Creek Enters*., 885 F.2d 1293 (6th Cir. 1989), where the court found that the defendant did not purposefully avail itself of Michigan privileges or opportunities for the purposes of Due Process. *Lak* involved a contract for the sale of land in Florida between a Michigan entity and an Indiana entity. The *Lak* court found significant for the "purposeful availment" analysis that (1) the defendant did not advertise or have any program for the sale of the land in Michigan; (2) for the sale of the land, the defendant did not reach out to the plaintiff for the purpose of creating any "continuing relationship" in Michigan; (3) the binding contract "ripened" in Indiana; and (4) the defendant had no continuing interest in profiting from the Michigan market. *Id*. at 1300-03.

B&D contends, like the defendant in *Lak*, that (1) CAI approached B&D for the project; (2) the parties never met face-to-face in Michigan; (3) the contract did not require either party to take any action in Michigan; (4) the parties did not contemplate a lengthy business relationship; (5) whether or not the contract between the parties was finalized in Michigan is not legally significant to personal jurisdiction; and (6) telephone calls and writings between the parties to and from Michigan do not create personal jurisdiction.

CAI responds that (1) B&D sent its proposed contract to CAI in Michigan; (2) the contract was "finalized" in Michigan when CAI accepted it; (3) all of B&D's communications to CAI were made to Michigan; (4) B&D sent multiple invoices to Michigan and received substantial payments from Michigan; (5) CAI and B&D entered into multiple contracts to perform work in other locations besides the Union Packaging Project; and (6) B&D allegedly directed its promise that it would reimburse the press' repair costs to CAI in Michigan. (Pl. Br. 10).

10

The Court finds that CAI has alleged sufficient facts to demonstrate that B&D purposefully availed itself of the privilege of acting in Michigan. Unlike *Lak*, the parties in this case did not contemplate a "one-shot" deal involving that sale of land in a third state, but an ongoing relationship arising between the parties arising out of the Union Packaging project, as well as other projects that were concurrently negotiated and performed. The Court notes that the parties' contract and course of dealing establishes that B&D deliberately availed itself of doing business with a Michigan entity. B&D sent several proposals for the Union Packaging job to CAI in Michigan in the second-half of 2005. (Pl. Br. Ex. B, B&D Aug. 27, 2005 Proposal; Ex. C, B&D Sept. 1, 2005 Proposal, Ex. E, October 27, 2005 Proposal). It appears from the record that CAI's acceptance in Michigan of the final proposal created the binding agreement. The parties not only communicated from their respective offices about the details of the Union Packaging Project, but also concerning other ongoing projects in other states. B&D sent invoices to Michigan, and accepted payment on those invoices from CAI in Michigan. The fact that CAI may have initially contacted B&D about the potential projects does not eliminate a Michigan court's personal jurisdiction. Furthermore, in this instance, the facts that the parties never physically "met" in Michigan does not deprive this Court of jurisdiction over B&D. *See Burger King*, 471 U.S. at 476.

These business contacts were not "random, fortuitous, or attenuated." For the purposes of personal jurisdiction, B&D had fair warning that it was purposefully directing its business activities to a Michigan resident and could be "haled" into court in Michigan for an alleged breach of its contractual obligations to CAI. Therefore, the Court finds that CAI has demonstrated the "purposeful availment" prong.

11

b.      Cause of Action Arising out Forum-Related Activities

In order to determine whether the plaintiff's cause of action arises out of the defendant's

forum-related activities, the Sixth Circuit has provided the following analysis:

> [T]he second criterion does not require that the cause of action formally "arise from"
> defendant's contacts with the forum; rather, this criterion requires only that the cause of
> action, of whatever type, have a substantial connection with the defendant's in-state
> activities. Only when the operative facts of the controversy are not related to the
> defendant's contact with the state can it be said that the cause of action does not arise
> from that contact.

*Third Nat. Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989)

(internal quotations and citations omitted).

B&D argues that the cause of action did not arise out of its activities in Michigan. B&D

maintains that the only related Michigan activities involved answering phone calls or engaging

in written correspondence from its Wisconsin officers with CAI in Michigan. (Def. Br. 30).

B&D contends that CAI's cause of action arises out of damage to the press in Pennsylvania and

that this damage is unrelated to B&D's contacts with Michigan. (*Id.*).

CAI responds that its causes of action arise from B&D's contacts with Michigan.

According to CAI, this is not a case where a plaintiff is suing defendant on issues unrelated to

the defendant's contacts with the forum. (Pl. Br. 11). CAI asserts a first group of claims based

upon the damage to the press (breach of contract) and a second based upon B&D's

representations to CAI that it would reimburse CAI for the press' repair expenses (estoppel,

misrepresentation).

Since the activity that established purposeful availment is the same activity that gave rise

to CAI's claim, *Dedvukaj v. Maloney*, 447 F.Supp. 2d 813, 823 (E.D.Mich 2006), the Court

holds that the second prong is satisfied in this instance, since CAI's complaint stems from a breach of the contract created by the two entities.

              c.       Reasonableness

In considering whether the exercise of jurisdiction is so unreasonable to violate notions of fair play and substantial justice, the court considers: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social polices. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). The Sixth Circuit has held "that an inference of reasonableness arises where the first two criteria [for personal jurisdiction] are met" and that "only the unusual case will not meet this third criterion." *Theunissen*, 935 F.2d at 1461.

B&D argues that it would not be reasonable for the Court to exercise personal jurisdiction over it because (1) it would be burdened to litigate in another state, find a local attorney, and conduct discovery from the parties in states other than Michigan; (2) Michigan has no interest in adjudicating the instant case, other than providing a forum for its own resident; (3) CAI's interest in obtaining convenient and effective relief would be undermined by the need for discovery in other jurisdictions; (4) the Eastern District of Pennsylvania, being in closer proximity to the press in question and several witnesses would further the interest of interstate judicial system; and (5) Pennsylvania has an interest in protecting its resident company from injury from out-of-state parties.

CAI responds that (1) the burden on B&D would be the same if litigating the matter in

Michigan or in Pennsylvania and (2) Michigan has a strong interest in ensuring that out-of-state companies doing substantial business with residents honor their obligations

Since the Court finds that the first two criteria are satisfied here, there is an inference that exercising personal jurisdiction would be reasonable in this instance. B&D has not shown that it would incur any unfair burden by litigating in Michigan, rather than in Pennsylvania. Furthermore, the Court is not convinced that Pennsylvania has a greater interest in resolving this dispute than Michigan.

Therefore, the Court DENIES B&D's Motion to Dismiss for Lack of Personal Jurisdiction.

### B.      Transfer of Venue

Since it is undisputed that the Court has subject matter jurisdiction over the parties by reason of diversity, 28 U.S.C. § 1391 is the appropriate venue statute. 28 U.S.C. § 1391(c) ("For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced"). As discussed above, since the Court has personal jurisdiction over B&D, venue is accordingly proper in the Eastern District of Michigan.

Even if the Court finds venue to be proper in the Eastern District of Michigan, the Court retains wide discretion to transfer an action under 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought"). The parties do not dispute that this action could have been brought in the Eastern District of Pennsylvania.

In ruling on a transfer of venue motion under § 1404(a), the Court must determine whether (1) the action could have been brought in the proposed transferee-court, (2) a transfer would promote the interests of justice, and (3) a transfer would serve the parties' and the witnesses' convenience. *D'Amato*, 341 F. Supp. 2d at 749 (citation and quotation omitted). The movant bears the burden of demonstrating that fairness and practicality strongly favor the forum to which transfer is sought. *Id.* (citation and quotation omitted). The movant must make this showing by a preponderance of the evidence. *Id.* (citation and quotation omitted).

In evaluating a motion to transfer venue, a district court considers the following factors: (1) the convenience of the parties; (2) the convenience of the witnesses, (3) the relative ease of access to the sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interests of justice. *Helder v. Hitachi Power Tools, USA LTD.*, 764 F. Supp. 93, 96 (E.D.Mich. 1991). In short, a court may consider any factor that may make any eventual trial easy, expeditious, and inexpensive. *Id.* (citation and quotations omitted). "Generally, a plaintiff's choice of forum will be given substantial deference." *D'Amato*, 341 F. Supp. 2d at 749-50.

### 1.    Convenience of the Parties and the Witnesses

The convenience of the witnesses is one of the most important factors in determining whether to grant a § 1404(a) motion. *Id.* Furthermore, the residence of "key" witnesses is more important for venue purposes than the raw number of witnesses. *Id.* "The moving party should generally provide each witness's name and the subject matter of the witness's anticipated testimony." *Id.* Finally, the "convenience of witnesses who are also employees is considered as

part of a motion to transfer and is not discounted." *Id.* at 750-51. "Justice is best served, however, when the jury is permitted to view the most material witnesses." *Catalno v. BRI, Inc.*, 724 F. Supp. 1580, 1584 (E.D. Mich. 1989). The Court can also consider the possibility of testimony via de bene deposition for other witnesses. *Id.*

B&D contends that (1) the non-party witnesses will include Union Packaging principals and employees and their press inspector, who are located in either Pennsylvania or New Jersey; and (2) CAI's lost work opportunities damage claim will require discovery involving a Pennsylvania corporation. (Def Br. 37).

CAI responds that the "key" witnesses include Thomas Williams of CAI (Michigan), Bernard Wotachek of B&D (Wisconsin), Steve Gaigg of B&D (Wisconsin), Dwayne Bolick of B&D (Wisconsin), Tom Huggins of ET Consulting (Colorado), and Bobst technicians who repaired the press (New Jersey). (Pl. Br. 15). Although CAI admits that the parties will need to conduct discovery involving Union Packaging employees, the "critical testimony" for its claims involving breach of contract require Gaigg, Bolick, and Huggins. For the claims of estoppel and misrepresentation, the necessary witnesses are Williams and Wotachek. (*Id.*). CAI points out that B&D also has filed counterclaims against CAI for work that CAI contracted with B&D to perform in other states. (*Id.*; Def. Counter-Complaint, Ex. A, Invoices).

The Court holds that B&D has not shown that the Eastern District of Pennsylvania is a more convenient location for "key" and "non-party" witnesses. Even though that district may be in closer physical proximity to certain Union Packaging employees and agents, the majority of "key" and "non-party" witnesses critical to the case reside in Michigan, Wisconsin, and Colorado. Therefore, this factor does not weigh in B&D's favor.

16

2.      Access to the Sources of Proof

A fundamental principle guiding the Court's analysis of the access to the sources of proof is that litigation should proceed in that place where the case finds its center of gravity. *D'Amato*, 341 F. Supp. 2d at 751 (citation and quotations omitted). While the location of physical evidence such as the wreckage of a crashed plane ought to be given more weight in balancing the analysis under § 1404(a), the location of documentary evidence is a minor consideration. *Id.* (citation and quotation omitted).

The parties agree that the documents required to conduct this case are located in Michigan, Wisconsin, Colorado, Pennsylvania, and New Jersey. (Def. Br. 38; Pl. Br. 16). The Court finds that these discovery materials can be easily transferred by electronic or regular mail, and does not weigh in factor of either choice of venue.

B&D urges the Court to consider the location of the damaged press as a factor weighing in its favor to transfer venue. B&D maintains that the press is difficult to move and that it is more convenient for the parties and their experts to inspect the press if the case were transferred to Philadelphia.

CAI admits that although the parties' experts may be required to do a physical inspection of the press, that would be true, no matter where venue was appropriate. CAI contends that that evidence involving the press can involve schematics and photographs of the press, supported by witness testimony. (Pl. Br. 16). The Court agrees and holds that the physical location of the press does not favor transferring venue to Pennsylvania.

3.      Compelling the Attendance of Unwilling Witnesses and Obtaining Willing Witnesses

17

B&D argues that the non-party witnesses from Union Packaging are necessary for the litigation of the case. If those witnesses are unwilling to come to Michigan, then a federal district court in Michigan would not have the power to compel their attendance. (Def. Br. 39). CAI counters that (1) most of the key witnesses are employed by companies that are parties to the litigation and (2) the subject of B&D's counterclaims would similarly be outside of a Pennsylvania's power to compel witness attendance.

Even if, all things being equal, litigating the case in Pennsylvania would bring Union Packaging employees into that court's power to compel attendance, B&D's counterclaims will require witnesses from other states, who are outside of the Pennsylvania court's power. More importantly, B&D has not shown that Union Packaging employees would be unwilling to testify in Michigan or give de bene esse depositions. Therefore, this factor does not weigh in favor of transferring venue.

## III.    CONCLUSION

For the foregoing reasons, the Court hereby:

(1)    **DENIES** B&D's Motion to Dismiss for Lack of Personal Jurisdiction; and

(3)    **DENIES** B&D's Motion to Transfer Venue.


**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 16, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on March 16, 2007.

s/Denise Goodine
Case Manager